[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-14186

_____

KAREN FINN,
JULLIAN FORD,
HYLAH DALY,
JENNE DULCIO,
GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC.,
et al.,

                                              Plaintiffs-Appellees,

*versus*

COBB COUNTY BOARD OF ELECTIONS AND REGISTRATION,
et al.,

                                              Defendants,

COBB COUNTY SCHOOL DISTRICT,

                              Intervenor-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-02300-ELR

_____

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

    This is an attempted interlocutory appeal by the Cobb County School District of a preliminary injunction order entered on December 14, 2023, that bars the use of a 2022 redistricting map for future Cobb County School Board elections. We don't have jurisdiction to decide the merits of the School District's appeal. At the time of the entry of the preliminary injunction, the School District was no longer a party in the case but was participating only as a friend of the court, and it still is not a party to the case. It lacks standing to appeal the order.

**I.**

    The Cobb County School Board is the governing body of the Cobb County School District. *See* Ga. Code Ann. § 20-2-50. The School Board redrew its seven voting districts based on the

2020 census. After the School Board voted 4–3 along racial and party lines to adopt the redistricting map, it submitted that map to the Georgia General Assembly. The map was included in House Bill 1028, which passed both legislative houses and was signed into law on March 2, 2022. *See* 2022 Ga. Laws 5274.

In June 2022 four registered Cobb County voters and a group of non-profit organizations sued the Cobb County Board of Elections and Registration and its then-director (the "Election Defendants") under 42 U.S.C. § 1983, alleging that the 2022 redistricting map was based on unconstitutional racial gerrymandering in violation of the Equal Protection Clause of the Fourteenth Amendment. The operative complaint claims that map "packed" Black and Latino voters into certain voting districts to "dilute their political power" and preserve a majority white School Board. The complaint sought declaratory and injunctive relief to prevent the 2022 map from being used.

The Cobb County School District moved to intervene as a defendant, and the district court granted that motion. Now a party defendant, the School District moved for judgment on the pleadings on the grounds that it was not liable for any constitutional violation. Its primary argument was not that the 2022 map was constitutionally valid, but that the School District was not liable for any infirmity in the map because it was the Georgia General Assembly and not the School Board that enacted the challenged map. It also argued that the plaintiffs could not show that the alleged constitutional violation resulted from a government policy or custom as is

required for municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). In July 2023 the district court entered an order granting the School District's motion for judgment on the pleadings based on *Monell*. (It rejected the School District's theory that the Georgia General Assembly was the only proper defendant.) But for whatever reason the court did not then enter a judgment to that effect.

Not willing to leave the fight, even after successfully asking to do so, the School District continued to file motions and participate in discovery. That prompted the district court to enter a formal judgment in the School District's favor, terminate it from the docket, and enter oral and written orders prohibiting the School District from attempting to participate in the case as if it were a party.

Meanwhile, the plaintiffs and the Election Defendants, which were still parties in the ongoing litigation, entered into a stipulated settlement agreement. As part of that agreement, the Election Defendants consented to the plaintiffs filing a motion for a preliminary injunction and agreed not to oppose the motion or take any position on the merits of the racial gerrymandering claim. The parties stipulated to a proposed remedial schedule that would theoretically give the Georgia General Assembly enough time to draw a new electoral map that could be used in the 2024 election. They also agreed that if the General Assembly failed to draw a new map or if the map drawn by the General Assembly failed to meet the

23-14186               Opinion of the Court                     5

court's approval, the court would supervise the implementation of a remedial map with input from the parties.

The plaintiffs filed their motion for a preliminary injunction on October 23, 2023. They asked the court to enjoin the use of the 2020 redistricting map in any future elections and give the Georgia General Assembly the first opportunity to draw a new map. As they had promised in the stipulated agreement, the Election Defendants did not oppose the motion. The School District had not entered into that agreement and, as we have indicated, was no longer a party at the time it was entered. On November 8, 2023, the School District did obtain leave of court to oppose, as an amicus, the motion for a preliminary injunction.

On December 14, 2023, the district court granted the preliminary injunction. The court concluded that the plaintiffs were substantially likely to succeed on the merits of their racial gerrymandering claim involving the 2022 map and that the other preliminary injunction factors also weighed in their favor. According to the court, the evidence showed that race was likely the predominant motivating factor in drawing the 2022 map and that drawing the map based on race likely could not withstand strict scrutiny.

Consistent with the remedial plan stipulated to by the parties in their settlement agreement, the district court gave the Georgia General Assembly an opportunity to produce a new electoral map that would pass constitutional muster. The court stated in its preliminary injunction order that if the General Assembly did produce a new map, the parties could file objections to it, and the court

would then decide whether to approve that map. The court's goal was to approve a new map by February 9, 2024, which the parties agreed would leave enough time for the map to be "properly implemented" in time for the scheduled election.

Still not a party, and without seeking to reintervene for purposes of appeal, the School District promptly appealed the preliminary injunction order. On January 19, 2024, a motions panel of this Court stayed that order (and its deadlines for approving any remedial map) pending the outcome of this appeal.

Not long thereafter, on January 30, 2024, the Georgia General Assembly passed Senate Bill 338, which establishes a new electoral map for the Cobb County School Board. *See* Ga. S.B. 338 § 1 (2024). Governor Brian Kemp signed the bill into law on that same day, and it became effective immediately. *See id.* § 2. The new law contains not only a general repealer regarding any inconsistent laws, *see id.* § 4, but also a specific provision that repeals "in its entirety" the 2022 Act containing the challenged redistricting map, *see id.* § 3, which had been preliminarily enjoined.

## II.

"[W]e have 'a special obligation to satisfy ourselves of our own jurisdiction' before proceeding to the merits of an appeal." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (alterations adopted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)). There's no dispute that the district court's order granting the preliminary injunction is an interlocutory order that is immediately appealable. *See* 28 U.S.C. § 1292(a)(1); *Noble Prestige Ltd.*

23-14186               Opinion of the Court                          7

*v. Galle*, 83 F.4th 1366, 1374–75 (11th Cir. 2023). The threshold question is whether the School District has standing to appeal that order.[1] We review *de novo* questions of appellate standing. *Kimberly Regenesis, LLC v. Lee County*, 64 F.4th 1253, 1258 (11th Cir. 2023).

Under Article III of the Constitution, "[l]itigants must establish their standing not only to bring claims, but also to appeal judgments." *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003); *see Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). To establish appellate standing, a litigant must prove that it has (1) "suffered a concrete and particularized injury" (2) "that is fairly traceable to the challenged conduct," (3) and that "is likely to be redressed by a favorable judicial decision." *Kimberly Regenesis*, 64 F.4th at 1259 (quotation marks omitted). While those three standing requirements resemble the standing requirements a plaintiff must meet to bring a case in the first instance, *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), the requirements are "not identical,"

---

[1] There is also a second jurisdictional issue: whether the School District's appeal has become moot in light of the Georgia General Assembly's later enactment of a new electoral map and express repeal of the 2022 map that has been preliminarily enjoined. But we are free to address standing and mootness in whatever order we prefer. *See Gardner*, 962 F.3d at 1336 ("The Supreme Court has clarified that a reviewing court can 'choose among threshold grounds for denying audience to a case on the merits.'") (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). We think it best in this case to start with standing, and because we conclude that the School District lacks standing, we need not address the mootness question. One could say that the mootness question is moot.

*Wolff*, 351 F.3d at 1353.  For example, while standing to sue requires an "injury caused by the underlying facts," standing to appeal requires an "injury caused by the judgment."  *Kimberly Regenesis*, 64 F.4th at 1259 (quotation marks omitted).  In other words, the litigant must have actually been "aggrieved by the judgment or order" to appeal it.  *Wolff*, 351 F.3d at 1354 (quotation marks omitted).

In addition to those standing requirements, there is a "well settled" rule that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment."  *Kimberly Regenesis*, 64 F.4th at 1260–61 (quoting *Marino v. Ortiz*, 484 U.S. 301, 304 (1988)); *see Wolff*, 351 F.3d at 1354 ("Generally, one not a party lacks standing to appeal an order in that action.") (quotation marks omitted); *see also Arizonans for Off. Eng.*, 520 U.S. at 64–65 ("The decision to seek review is not to be placed in the hands of concerned bystanders, persons who would seize it as a vehicle for the vindication of value interests.  An intervenor cannot step into the shoes of the original party unless the intervenor independently fulfills the requirements of Article III.") (citation and quotation marks omitted).  An amicus, as a nonparty, has no right to appeal.  *See* 15A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3902.3 (3d ed. 2024); *see also United States v. Michigan*, 940 F.2d 143, 165–66 (6th Cir. 1991).

And, to repeat, the School District is a nonparty.  It was not a named party, and though it became a party by intervention, it lost party status when the district court granted its motion for judgment on the pleadings (which was months before the court entered

the preliminary injunction).² The School District asserts that it nevertheless has standing to appeal the preliminary injunction under an exception to the "only a party may appeal" rule that we discussed in *Kimberly Regenesis*. *See* 64 F.4th at 1261.

In *Kimberly Regenesis* a county (which was a party defendant) and county commissioner (who was a nonparty) appealed the district court's denial of the commissioner's immunity from discovery. *Id.* at 1255–56. We held that the county did not have standing to appeal the immunity denial because the county was not itself "aggrieved" by that order. *Id.* at 1259–60. We also held that the commissioner could not appeal because he was not a party to the case and did not participate in the district court proceedings. *Id.* at 1262–63. We discussed the possibility of an "exception" where "someone not named a party to a suit (who hasn't become a party) may appeal," but we did not decide "the precise contours" of the potential exception because it would not have applied in that case anyway. *Id.* at 1261–62. We explained that "whatever the test" for a nonparty appeal exception, it would include the requirement that the nonparty trying to appeal "must have at least participated in

---

² *See also Finn v. Cobb Cnty. Bd. of Elections & Registration*, Nos. 23-13439 & 23-13764, 2024 WL 470345, at *2 (11th Cir. Jan. 19, 2024) (holding in a different appeal from the same case that we lacked jurisdiction to review the School District's challenge to the district court's orders prohibiting it from participating in the case as a party because those were not appealable orders, and explaining that the district court's grant of the School District's motion for judgment on the pleadings "naturally terminated the School District's status as a party in the case").

the district court" proceedings, and the county commissioner in that case had not done so. *Id.* That does not mean *Kimberly Regenesis* held that a nonparty who did participate in the district court proceedings may appeal an order or judgment that resulted from them.

To begin with, our discussion in *Kimberly Regenesis* about the possibility of a nonparty appeal exception was only dicta. As we've said many times, "[t]he holding of a case comprises both the result of the case and those portions of the opinion necessary to that result." *See, e.g.*, *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (quotation marks omitted); *United States v. Hurtado*, 89 F.4th 881, 895 n.16 (11th Cir. 2023) (same). Any other statements that are not necessary to the result are dicta and do not bind us. *See United States v. Shamsid-Deen*, 61 F.4th 935, 949 n.1 (11th Cir. 2023) ("Because the statement . . . was not necessary to the result in that case, it was dicta."); *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1333 (11th Cir. 2016) ("[T]he statement is dicta because it was not necessary to the result in [the earlier case]."); *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 725 (11th Cir. 2020) ("Our statement . . . in [an earlier case] was not necessary to the decision we reached, so it is not part of our holding."); *Castillo v. Fla., Sec'y of DOC*, 722 F.3d 1281, 1290 (11th Cir. 2013) ("[B]ecause those statements in [an earlier] opinion are not necessary to the result in that case, . . . they are not the holding of the decision."); *Powell v. Thomas*, 643 F.3d 1300, 1304–05 (11th Cir. 2011) ("As we've said, dicta is defined as those portions of an opinion that are not necessary to deciding the case then before us,

whereas holding is comprised both of the result of the case and those portions of the opinion necessary to that result by which we are bound.") (quotation marks omitted); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("We have pointed out many times that regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case. All statements that go beyond the facts of the case . . . are dicta. And dicta is not binding on anyone for any purpose.") (citations omitted). Our statements about the possibility of an exception that might allow a nonparty who participated to appeal were not necessary to the result *Kimberly Regenesis* reached, which was that the nonparty who did not participate could not appeal. That was the actual holding of the case.

To reiterate, any suggestion we made in *Kimberly Regenesis* about whether and when "a nonparty may sometimes appeal when he has participated before the district court," *see* 64 F.4th at 1256, was nonbinding dicta. "As we have explained time and again: '[A] decision can hold nothing beyond the facts of that case.'" *United States v. Birge*, 830 F.3d 1229, 1233 (11th Cir. 2016) (alteration in original) (quoting *Edwards*, 602 F.3d at 1298 (collecting cases)); *see United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision.") (quotation marks omitted).

Of course, dicta are not statements that dare not speak their name. Dicta can be useful. *See McDonald's Corp. v. Robertson*, 147

F.3d 1301, 1314 (11th Cir. 1998) (Carnes, J., concurring) ("Dicta has its place and serves some purposes."). Our dicta in the *Kimberly Regenesis* opinion did include the observation that some other circuits had allowed nonparties to appeal when: (1) the nonparty "actually participated" in the district court proceedings; (2) the nonparty has "a personal stake in the outcome" of the proceedings; and (3) "the equities weigh in favor of hearing the appeal." 64 F.4th at 1261 (quoting *EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1442 (5th Cir. 1995)) (emphasis omitted); *see also, e.g.*, *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 349 (3d Cir. 1999) (recognizing that a nonparty may bring an appeal when "(1) the nonparty has a stake in the outcome of the proceedings that is discernible from the record; (2) the nonparty has participated in the proceedings before the district court; and (3) the equities favor the appeal"); *see also Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 384 (4th Cir. 2018) (focusing on the first two requirements); *Curtis v. City of Des Moines*, 995 F.2d 125, 128 (8th Cir. 1993) (same); *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 993 (10th Cir. 2021) (same); *SEC v. Wencke*, 783 F.2d 829, 834 (9th Cir. 1986) (focusing on the first and third requirements).

But, as in *Kimberly Regenesis*, we need not decide whether to follow any of those other circuits and adopt a two- or three-requirement exception for nonparty appeals, because even if we did both the first and third requirements would be the ruin of the School District's attempt to appeal in this case. *See* 64 F.4th at 1262.

First, the appeal fails under the "participation" test of the nonparty appeal exception. When our sister circuits have considered whether a nonparty "actually participated" in the district court proceedings, they have focused on whether the nonparty has "actively participated in the particular stage of the district court proceedings that is challenged on appeal." *Sky Cable, LLC*, 886 F.3d at 384; *see e.g.*, *Curtis*, 995 F.2d at 128 (concluding that nonparties had sufficiently participated in the underlying proceedings where they "actively participated in post-trial executions on the judgment" being challenged, "made appearances to contest the issues they raise here on appeal[,] and the district court treated them as parties by accepting their briefs"); *see also Kimberly Regenesis*, 64 F.4th at 1263 (citing *Sky Cable* for its holding "that a nonparty could not appeal where she did not participate in any manner in the post-judgment proceedings at issue in the appeal") (alteration adopted) (quotation marks omitted). The School District did not participate as a party or intervenor in the proceeding leading to the preliminary injunction it now attempts to appeal, because it had been dismissed from the case months before. Instead, it participated as an amicus, which does not qualify as participation for nonparty appellate standing. *See* Wright, Miller, & Cooper, *supra*, § 3902.3.

Second, the appeal fails under the "equities" test of the nonparty appeal exception. The equities disfavor permitting the appeal because the School District sought and obtained nonparty status at its own urging by securing a dismissal of the claim against it. It asked to be dismissed from the case, and it got what it asked for. The parties have not identified — and we have not found — a

published decision by any federal court applying a nonparty appeal exception to give a self-determined nonparty the same right to appeal it would have had if it had not bailed out of the case. *See Dopp v. HTP Corp.*, 947 F.2d 506, 512 (1st Cir. 1991) (holding that the nonparty appellant lacked standing to appeal the trial court's judgment when it "departed from the case, on its own motion, long before the judgment" was entered).

After throwing off its party status the School District sought and obtained amicus status. To allow an unsatisfied amicus to appeal an order or judgment could encourage potential parties to avoid intervention in favor of amicus status, hoping to receive the same appellate rights as parties without exposing themselves to the risks of party status (such as the payment of attorney's fees). *See Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 41 (1st Cir. 2000) (noting that litigants may not "evade potential liability by declining to seek party status and still expect to be treated as parties for the purpose of testing the validity of an ensuing decree") (footnote omitted). The equities argue against encouraging that. *See id.*

Also arguing against permitting the School District to appeal is the Supreme Court's admonition that when a nonparty has an interest that is affected by a district court judgment, the "better practice" is for such a nonparty to seek intervention for purposes of appeal. *See Marino*, 484 U.S. at 304; *see also Microsystems Software*, 226 F.3d at 40 ("While there is an exception to the 'only a party may appeal' rule that allows a nonparty to appeal the denial of a

motion to intervene, the situation differs when intervention is readily available. In that event, courts are powerless to extend a right of appeal to a nonparty who abjures intervention.") (citation omitted). The School District could have but did not seek intervention for purposes of appeal. There is no persuasive reason to allow the School District to ignore the "better practice" here. *See Marino*, 484 U.S. at 304.

Because the School District flunks both tests, participation and equities, we need not and do not decide what happens when a nonparty putative appellant passes one but not the other.

This appeal is dismissed for lack of jurisdiction. Lacking jurisdiction, we express no opinion on the merits of the preliminary injunction.

**DISMISSED.**